Helen DOW, Petitioner,

v.

## WORKERS' COMPENSATION APPEAL BOARD (Household Finance Company), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 22, 2000.

Decided March 5, 2001.

Nancy D. Wasser, Philadelphia, for petitioner.

Before McGINLEY and FRIEDMAN, JJ. and MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

Helen Dow (Claimant) petitions for review of the June 16, 2000 order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of the workers' compensation judge (WCJ) to grant Household Finance Company's (Em-

ployer) Petition to Modify/Suspend Compensation Benefits and to deny Claimant's Penalty Petition. We affirm in part, reverse in part, and remand for a hearing on the issue of whether proper notice of an available job was sent to Claimant.

Claimant was working for Employer on October 22, 1991, when she sustained a work-related injury in the nature of a pinched nerve in her right shoulder and a lumbar strain. A Notice of Compensation Payable was issued, setting Claimant's disability rate at $378.59 per week, based on an average weekly wage of $567.88. (WCJ's Findings of Fact of 11/3/94, No. 1.)

In March 1992, Employer filed a Petition to Modify/Suspend Compensation Benefits on the basis that Claimant was able to return to available employment, which she refused.[1] (WCJ's Findings of Fact of 11/3/94, No. 2.) Claimant filed a Penalty Petition, alleging that Employer failed to comply with an August 10, 1992 order, which directed Employer to reinstate compensation benefits. (WCJ's Findings of Fact of 11/3/94, No. 4.)[2]

On March 16, 1994, at a hearing on Employer's and Claimant's petitions, Claimant appeared before the WCJ to testify on her own behalf in defense of Employer's petitions and in support of her Penalty Petition; Claimant also submitted the deposition testimony of a medical expert, Leonard Johnson, M.D. At the hearing, Employer submitted the depositions of a claims adjuster, Liz Mengucci; a medical expert, Frank Mattei, M.D.; and an employment development specialist, Eugene Dychdala.

The WCJ credited the testimony of all Employer's witnesses. Specifically, the WCJ accepted Mengucci's testimony that she advised Claimant, by a letter dated January 28, 1992, that Claimant's pre-injury position of a sales associate was available with some modifications and that Claimant did not return to work based on the offer. (WCJ's Findings of Fact of 11/3/94, No. 9.) The WCJ also found Dr. Mattei's diagnosis of Claimant's injury to be credible[3] and noted Dr. Mattei's approval of a modified version of an account executive position offered by Employer to Claimant. (WCJ's Findings of Fact of 11/3/94, No. 10.)[4] Further, the WCJ found credible and convincing Dychdala's testimony that Employer agreed to accommodate Claimant in her position by not asking her to leave the office for sales calls. (WCJ's Findings of Fact of 11/3/94, No. 11.)

In a November 3, 1994 order, the WCJ granted Employer's Modification/Suspension Petition as of January 28, 1992, and

1. In addition, Employer filed a Review Medical Petition alleging that treatment and services rendered to Claimant were not reasonable, necessary or causally related to the October 22, 1991 injury. (WCJ's Findings of Fact 11/3/94, No. 3.) The WCJ determined that Employer's Review Medical Petition was moot under Act 44, effective August 31, 1993, but. to the extent that the treatment rendered by Claimant's doctor prior to that time was unreasonable and unnecessary, the WCJ granted the petition. The WCAB affirmed on appeal. Because Claimant does not challenge this portion of the WCAB's opinion, we need not consider it further.

2. The Claimant's Penalty Petition followed Employer's request for supersedeas, which was granted in a June 10, 1992 interlocutory order, but later denied in an August 10, 1992 interlocutory order. (WCJ's Findings of Fact of 11/3/94, No. 6.) On September 2, 1992, Employer reinstated Claimant's temporary total disability benefits. (WCJ's Findings of Fact of 11/3/94, No. 7.)

3. Dr. Mattei diagnosed Claimant with epichondylitis of the right elbow and a mild lumbosacral strain with mild radiculitis of the right lower extremity, not a herniated disc. Based on this diagnosis, Dr. Mattei determined that Claimant could return to employment with a restriction on heavy lifting.

4. In the preceding Finding of Fact, the WCJ referred to the offered job as a "sales associate" position. We assume that this is the same position as an account executive, but regardless, Claimant does not indicate there was a problem with the job title, so we need not address the issue here.

denied Claimant's Penalty Petition. Claimant appealed to the WCAB, arguing that she did not receive a fair hearing because she did not have the opportunity to cross-examine Dr. Mattei and Mengucci when they were first deposed. The WCAB agreed, determining that Claimant was not afforded a "fair trial in a fair tribunal." In an April 10, 1997 order, the WCAB vacated the WCJ's decision and order and remanded the case to give Claimant's and Employer's counsel an opportunity to examine the witnesses contemporaneously.

Following remand, Claimant filed a motion seeking to have the WCJ recuse himself, and a hearing on the recusal motion took place on May 16, 1997. Subsequently, Dr. Mattei and Mengucci were re-deposed, with both Claimant's and Employer's counsel present. The WCJ, who had not recused himself, evaluated the new testimony and, in an October 6, 1998 decision, once again determined that Claimant's compensation benefits should be suspended as of January 28, 1992, based on the testimony of Dr. Mattei and Mengucci. (WCJ's Conclusions of Law of 10/6/98, No. 2; WCJ's Findings of Fact of 10/6/98, Nos. 16 and 17.) The WCJ also denied Claimant's new Penalty Petition, which was filed on June 20, 1997, because Claimant had not introduced any evidence to support the alleged violations by Employer. (WCJ's Conclusions of Law of 10/6/98, No. 4; WCJ's Findings of Fact of 10/6/98, Nos. 13 and 15.) Claimant appealed a second time to the WCAB, which affirmed the WCJ's grant of Employer's Modification/Suspension Petition and the denial of Claimant's Penalty Petitions in a June 16, 2000 decision. Claimant now petitions this court for review of the WCAB's order,[5] raising a variety of issues.

5. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

## I. Recusal

■ Claimant first contends that she was denied due process and that the WCJ committed an error of law when the WCJ refused to recuse himself from the case. In making this argument, Claimant alleges bias, independent of a conflict of interest. In this type of case "it is presumed that a trial judge is capable of recognizing in himself/herself the symptoms of bias and prejudice. If the judge believes that he or she can hear and dispose of the case without partiality, then that decision will not be overturned, absent an abuse of discretion." *Borough of Kennett Square v. Lal,* 165 Pa.Cmwlth. 573, 645 A.2d 474, 478, *appeal denied,* 540 Pa. 613, 656 A.2d 119 (1994); *see also Suprock v. Workmen's Compensation Appeal Board (Millersville University of Pa.),* 657 A.2d 1337 (Pa.Cmwlth.1995). To overcome this presumption, the party making the allegations must show bias on the record. *Suprock.* Here, Claimant failed to make this showing.

■ Claimant argues that because the WCJ overruled every objection made by Claimant's counsel during a subsequent hearing, refused to consider evidence offered by Claimant and refused to allow Claimant's counsel to subpoena Employer's file, the WCJ's bias was clear.[6] We disagree. Claimant does not contend, and we cannot conclude, that any of the WCJ's rulings were contrary to the applicable law; Claimant only argues that by ruling against her, the WCJ exhibited bias. "A mere adverse ruling, without more, does not demonstrate the bias required for a recusal to be granted." *Commonwealth v. Miller,* 541 Pa. 531, 554, 664 A.2d 1310, 1321 (1995).

6. Apparently, the May 16, 1997 hearing on the recusal motion was not recorded, but Claimant is very specific in her brief in stating her various contentions.

## II. Penalty Petition

■■■ Claimant next argues that the WCJ erred in finding that Claimant failed to meet her burden of proof to prevail on the Penalty Petition.[7] Pursuant to section 435(d)(i) of the Workers' Compensation Act (Act),[8] penalties may be assessed against an employer who discontinues compensation benefits in violation of the Act's provisions. Whether to impose penalties is within the discretion of the WCJ. *McKay v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 654 A.2d 262 (Pa.Cmwlth.1995). If a claimant seeks penalties for an employer's alleged violation of the Act, the burden of producing such evidence and persuading the factfinder of its credibility is on the claimant. *Sanders v. Workers' Compensation Appeal Board (Marriott Corporation)*, 756 A.2d 129 (Pa.Cmwlth.2000). No penalty may be imposed under section 435 absent proof of a violation of the Act or its regulations, *McKay*, and a violation of the Act must appear in the record in order for a penalty to be appropriate. *Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282 (Pa.Cmwlth.2000). Based on our review of the record, we are unable to determine that the WCJ committed an error by denying the Penalty Petition.

7. As noted previously, there were two Penalty Petitions filed by Claimant and denied by the WCAB in its June 16, 2000 decision. However, here, Claimant challenges the denial of a singular Penalty Petition, the petition filed on June 20, 1997.

8. Section 435(d)(i) of the Act, Act of June 2, 1915, P.L. 736, added by section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 991(d)(i), provides:

 (d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:
 (i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued

At the hearing held before the WCJ on March 9, 1998, Claimant's counsel indicates that she would introduce evidence regarding the Penalty Petition at the next hearing. (R.R. at 260a, N.T. at 28.) However, nothing in the record indicates that such a hearing was held, or, indeed, that a hearing was ever specifically requested. Without evidence of record to support the Penalty Petition,[9] an award of penalties is not appropriate.

## III. Attorney's Fees

■■■ Claimant also requests unreasonable contest attorney's fees, pursuant to section 440 of the Act,[10] on grounds that there was no basis for Employer to contest the Penalty Petition. Under section 440(a), attorney's fees should be awarded to the party "in whose favor the matter at issue had been finally determined in whole or in part," unless the WCJ excludes the fees because the contest was reasonable. 77 P.S. § 996(a). Here, the Penalty Petition was not decided in Claimant's favor; therefore, she is not entitled to attorney's fees.

## IV. Petition to Modify/Suspend Compensation Benefits
### A.

■■■ Next, Claimant argues that the WCJ erred in granting Employer's Peti-

and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

9. Claimant states in her brief that her "uncontroverted testimony," exhibits presented, and admissions of Employer's counsel are evidence that Employer had not made benefit payments as required. (Claimant's Brief at 23.) However, Claimant does not indicate where in the record the court can locate this evidence, as required by Pa. R.A.P. 2119(e), and our review of the record does not reveal any such evidence.

10. Act of June 2, 1915, P.L. 736, added by section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 996.

tion to Modify/Suspend Compensation Benefits where the WCJ improperly disregarded or refused to admit relevant evidence. On the other hand, Employer contends that the WCJ did not disregard admissible evidence and properly excluded irrelevant evidence that was outside the scope of the remand order. We agree with Employer.

Initially, to determine what the WCJ was directed to do within the scope of the remand order, it is necessary to examine the contents of that order. *Reilly v. Workmen's Compensation Appeal Board (General Electric Company),* 136 Pa. Cmwlth.543, 584 A.2d 364 (1990). In this case, the order from the WCAB stated the following:

> The Decision and Order of the WCJ is **VACATED.** We **REMAND** this matter to the WCJ to have another deposition of both Dr. Mattei and Ms. Mengucci with Claimant's Counsel and Defendant's Counsel provided the opportunity to conduct a direct examination and cross-examination of these witnesses contemporaneously. The WCJ is ordered to make all necessary findings of fact, conclusions of law, and enter an appropriate Order.

Based upon the WCAB's order, the WCJ was directed to make findings of fact and conclusions of law following the new depositions of the witnesses. Thus, the WCJ could consider any evidence that came to light from the direct and cross-examinations of those witnesses, so long as it fell within the applicable time frame. The clock was stopped on March 16, 1994, the time of the prior hearing, and on remand, the WCJ could only consider evidence that existed at that time. New evidence, such as a September 1996 lumbar laminectomy and hospitalization, as well as Claimant's ongoing course of treatment since the hearing, was properly excluded by the WCJ as outside the scope of the remand order.

**B.**

Claimant next argues that the WCJ erred in granting the Modification/Suspension Petition because Dr. Mattei's testimony did not provide substantial evidence to support that petition.

In any workers' compensation proceeding, the WCJ, as the ultimate factfinder, is free to resolve conflicts in evidence and to determine the credibility of witnesses. *City of Philadelphia, Risk Management Division v. Workmen's Compensation Appeal Board (Harvey),* 690 A.2d 1293 (Pa.Cmwlth.), *appeal denied,* 549 Pa. 729, 702 A.2d 1061 (1997). Thus, the WCJ has the authority to accept or reject the opinions of any witness, including medical experts, and this court is bound by the credibility determinations made by the WCJ. *Nabisco Brands, Inc. v. Workers' Compensation Appeal Board (Tropello),* 763 A.2d 555 (Pa.Cmwlth.2000); *City of Philadelphia.* The WCJ's findings are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434 (1992). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 275, 501 A.2d 1383, 1387 (1985) (quoting *Murphy v. Commonwealth, Department of Public Welfare,* 85 Pa.Cmwlth. 23, 480 A.2d 382, 386 (1984)).

In this case, the WCJ accepted the testimony of Dr. Mattei and rejected the testimony of Claimant's medical expert. (WCJ's Findings of Fact of 10/6/98, No. 16.) Claimant argues that when Dr. Mattei examined Claimant and issued his reports, he did not have relevant treatment records, reports and diagnostic tests, including a January 9, 1992 CAT scan of Claimant showing a bulging disc and a February 20, 1992 MRI showing a herniated disc. Dr. Mattei testified on August 20, 1997:

Yes, I can give you my medical opinion with reasonable medical certainty. My medical opinion is that I cannot find any evidence of any herniated disc mostly with degenerative changes in the lumbrosacral spine, and therefore [the fact that Claimant later received lower back surgery] did not alter my opinion why I should not return her back to work.

(R.R. at 197a, N.T. at 49.) Dr. Mattei further testified that following his examination of Claimant, he was provided with the Claimant's records from various doctors and medical centers, x-rays of the pelvis and hip joint and EMG studies. Based upon this additional material, Dr. Mattei wrote a second medical report, although the information did not change his diagnosis. (R.R. at 192a 93a, N.T. at 44–45.) On cross-examination, Dr. Mattei acknowledged that he did not refer to the MRI or CAT scan in his four reports, but he stated that they confirmed his diagnosis. (R.R. at 208a–09a, N.T. at 60–61.)

As stated, the WCJ, in his role as factfinder, was free to believe Dr. Mattei's testimony over that of Claimant's doctor. *See Nabisco, City of Philadelphia.* Because Dr. Mattei's credible testimony provides substantial evidence to support the WCJ's finding that Claimant was physically able to return to work, that finding must be accepted as conclusive on appeal, *see Bethenergy, Peak,* and, thus, the WCAB did not err in determining that Employer's expert medical testimony provided the requisite basis for the WCJ to suspend Claimant's benefits.

**11.** In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 252, 532 A.2d 374, 380 (1987), our supreme court set forth the following test:

> 1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.
>
> 2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has

### C.

 Finally, Claimant contends that the WCJ's decision to suspend benefits was not supported by substantial evidence that Claimant was notified of an available job for which she had been given medical clearance.

 When an employer seeks to modify or suspend a claimant's benefits on the basis that the claimant has partially recovered some or all of his or her ability, the employer must meet the four prongs of the *Kachinski* test.[11] However, if the modification petition is based upon the employer's assertion that it offered a medically approved and available position to claimant, then the employer is not required to produce medical evidence of a change in condition. *H.M. Stauffer & Sons, Inc. v. Workmen's Compensation Appeal Board (Davis),* 687 A.2d 869 (Pa.Cmwlth.1996). Rather, the employer must only show that the position is within claimant's physical capabilities and "actually available"; that is, the offered position receives medical clearance, *and the claimant is advised of that clearance while the job is still open. Stauffer.*

In this case, Mengucci testified on March 9, 1998 that she sent a letter dated January 28, 1992 to Claimant's counsel at an address at 1400 South Penn Square, Philadelphia, in order to notify Claimant that an "Independent Medical Exam" found Claimant capable of returning to work as a sales representative for Employer.[12] (R.R. at 238a 39a, N.T. at 6 7.)

> been given medical clearance, e.g., light work, sedentary work, etc.
>
> 3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).
>
> 4. If the referral fails to result in a job then claimant's benefits should continue.

**12.** Claimant contends that the WCJ erred by refusing to allow Claimant to subpoena the file kept by Employer, which would have directly contradicted Mengucci's sworn testimony that she sent notice to Claimant through Claimant's counsel that a job was available.

Mengucci admits that this letter was the only letter sent on behalf of Employer to Claimant concerning her return to work. (R.R. at 251a, N.T. at 19.) Claimant's counsel, however, stated that she never received this letter.[13] In fact, Claimant's counsel stated that the letter is addressed to her at her former address, a building that had burned down and had not existed for approximately a year at the time the letter was mailed. (R.R. at 256a, N.T. at 24.) When asked whether she had her mail forwarded after the fire, Claimant's counsel responded that she did but that the forwarding order was no longer in effect after that lengthy time period. (R.R. at 257a, N.T. at 25.)

According to the mailbox rule, "proof that a letter was properly mailed raises a rebuttable presumption that the mailed item was, in fact, received." *Sheehan v. Workmen's Compensation Appeal Board (Supermarkets General)*, 143 Pa. Cmwlth.624, 600 A.2d 633, 636 (1991), *appeal denied*, 530 Pa. 663, 609 A.2d 170 (1992). Although a mere denial of the receipt of the mailed item is not enough to rebut the presumption, *Sheehan*, here, there is an issue as to whether the letter to Claimant was properly mailed and, thus, whether the presumption was even in place. Further, even if the presumption exists, Claimant did more than merely deny receipt of the letter; she offered evidence that, if believed, successfully rebutted the presumption. However, the WCJ makes no findings in this regard. Rather, in the October 6, 1998 decision, the WCJ simply determined that "[t]he testimony of Liz Mengucci is found credible

and persuasive by the undersigned that Claimant was provided notice of the job offer by way of letter sent to her attorney at her *then known address.*" (WCJ's Findings of Fact of 10/6/98, No. 17.) (Emphasis added.)

Although we recognize that the WCJ has the authority to make credibility determinations and resolve conflicts in evidence, *see City of Philadelphia*, the WCJ here did not do so. Instead, the WCJ summarily concluded that Claimant was notified of an available job without ever discrediting or, indeed, even acknowledging evidence that the letter was sent to an address that was wrong and non-existent. Without such crucial findings, we are unable to perform our appellate function.

Accordingly, the matter is remanded to the WCAB to remand to the WCJ for a hearing on the issue of notice and to make necessary findings as directed by this opinion.[14]

### ORDER

AND NOW, this 5th day of March, 2001, the order of the Workers' Compensation Appeal Board, dated June 16, 2000, is hereby affirmed in part, reversed in part, and remanded in accordance with this opinion.

Jurisdiction relinquished.

---

(Claimant's Brief at 19, 27.) Our review of the record and the pages Claimant cites, (R.R. at 250a–60a), shows that Claimant never requested the WCJ to issue a subpoena. Rather, Claimant's counsel states, "*I* am going to have to subpoena the file. . ." (R.R. at 255a.) Thus, the issue was not before the WCJ, and the WCJ did not err on this point. Nevertheless, the letter at issue was admitted into evidence as an exhibit at the hearing on March 9, 1998. (R.R. at 255a, N.T. at 23.)

**13.** At an earlier hearing on March 16, 1994, Claimant testified that no one told her that she had to go back to work for Employer. (R.R. at 105a, N.T. at 14.)

**14.** We remind the WCJ that under section 422(a) of the Act, 77 P.S. § 834, the WCJ must not only make such findings, but must also provide a reasoned decision, adequately explaining why he accepted or rejected particular evidence with regard to the notice issue.