IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lisa McGarry, : 
                       Petitioner : 
                        : 
       v. :   No. 991 C.D. 2020
                        :   Submitted: May 14, 2021
Doylestown Hospital (Workers' : 
Compensation Appeal Board), : 
                  Respondent : 

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE J. ANDREW CROMPTON, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON              FILED: August 23, 2021

Lisa McGarry (Claimant) petitions this Court for review of the September 10, 2020 Order (Order) of the Workers' Compensation Appeal Board (Board), in which the Board affirmed the October 31, 2019 Decision and Order of the workers' compensation judge (WCJ) denying the Claim Petition for Workers' Compensation Benefits (Claim Petition) filed by Claimant against Doylestown Hospital (Employer) and granting the Petitions to Terminate Compensation Benefits (Termination Petitions) filed by Employer. For the following reasons, we affirm the Order of the Board.

## I. Background and Procedural History

On July 31, 2018, Claimant filed a Claim Petition alleging a work injury to her lower back "with bilateral lower extremity radiculopathy," which occurred while she was "pulling on a Velcro strap in order to position a patient . . ." while working for Employer as a registered nurse, on September 23, 2015. Reproduced Record (R.R.) at 5a-6a. On August 8, 2018, Employer filed an Answer denying the material averments raised in the Claim Petition. R.R. at 9a-12a. On February 21, 2019, Employer filed a Termination Petition requesting that the WCJ terminate Claimant's workers' compensation benefits as of January 28, 2019, because Claimant had fully recovered from her work injury and was able to return to unrestricted work. R.R. at 13a. Claimant filed an Answer denying same. R.R. at 16a. On April 30, 2019, Employer filed another Termination Petition alleging Claimant had fully recovered and was able to return to work as of January 31, 2018. R.R. at 18a. On May 10, 2019, Claimant filed an Answer denying the allegations and asserting that this second Termination Petition should be dismissed "on the grounds of *res judicata*" because Employer had "ample opportunity to file same both prior to and during the pendency of the litigation of the first Termination Petition, which was fully litigated." R.R. at 21a.

The matter was assigned to the WCJ who held 3 hearings and admitted into evidence 4 exhibits presented by Claimant and 10 exhibits presented by Employer. The WCJ circulated a Decision and Order, including Findings of Fact and Conclusions of Law, on October 31, 2019.

## II. WCJ's Decision and Order

In his Decision and Order, the WCJ made the Findings of Fact that follow. Employer accepted liability for a lumbar strain injury via a Medical Only

Notice of Temporary Compensation Payable (NTCP) issued on October 1, 2015. The NTCP subsequently converted to a Notice of Compensation Payable by operation of law. Findings of Fact (F.F.) No. 2. Claimant filed the Claim Petition at issue herein in an attempt to expand the description of injury to include "lower back with bilateral lower extremity radiculopathy" and "to seek compensation for total disability as of May 16, 2018." F.F. No. 3.

The WCJ summarized Claimant's testimony at the October 3, 2018 hearing in this matter as follows. Claimant was assisting with a patient on a tilt table when she "felt something in her back." F.F. No. 4.b. Her leg "gave out" when she was walking out of the room. *Id.* Subsequently, she was placed on light duty for approximately six months, returning to full duty after being discharged by the occupational health doctors with whom she was treating. F.F. No. 4.c. Claimant continued to experience back and leg pain after returning to full duty. *Id.* Claimant underwent back surgery on May 22, 2018. However, she did not feel capable of returning to her preinjury job or to light duty. F.F. No. 4.d.

Claimant testified a second time at a hearing before the WCJ on April 10, 2019. The WCJ summarized Claimant's testimony as follows. Claimant reported that her pain had worsened and that she experienced an incident, on September 5, 2017, in which her right knee buckled, and her pain increased while ascending steps. F.F. No. 5.b. She testified that any prolonged activity could cause her to experience pain. *Id.* Claimant did not feel capable of returning to work, and her lifting was limited to no more than 10 pounds. F.F. No. 5.c. However, she acknowledged visiting Las Vegas and California and being present in Las Vegas during a shooting in which she was able to provide first aid. *Id.* She testified that

3

she babysits her grandchildren, even though it requires her to lift a baby and move a stroller. F.F. No. 5.e.

Claimant testified a third and final time before the WCJ at a hearing on July 15, 2019. The WCJ summarized that testimony as follows. Claimant acknowledged being aware of surveillance performed on her by Employer, noting that she does her own shopping and carries light bags but that her lifting is limited to 10 pounds. F.F. No. 6.a. She admitted carrying a 12-pack of beer. F.F. 6.c.

Claimant presented the deposition testimony of Dr. Zena Zingerman, who is board certified in physical medicine and rehabilitation. F.F. No. 7. The WCJ found that Dr. Zingerman "first saw [] Claimant on November 28, 2018[,] for complaints of low back pain with radiation into her legs. Claimant also complained of numbness." F.F. No. 7.a. Dr. Zingerman diagnosed Claimant with "status post lumbar fusion, status post hardware removal, lumbar disc herniation at L4-5 and lumbar radiculopathy." F.F. No. 7.b. Dr. Zingerman did not have any of Claimant's studies or records prior to 2018. She also did not review Claimant's diagnostic films, although she had viewed the reports from same. F.F. No. 7.d. Dr. Zingerman opined that Claimant remained disabled by her work injury, but she was unaware of Claimant's activity level in regard to providing care for her grandchildren. F.F. No. 7.e.

Employer presented the deposition testimony of Dr. Richard Schmidt, who is a board-certified orthopedic surgeon. He examined Claimant on January 31, 2018, and January 28, 2019. F.F. No. 8. When he first saw Claimant, she had a normal neurovascular examination with normal motor strength and reflexes. F.F. No. 8.b. Dr. Schmidt reviewed films from a December 19, 2017 magnetic resonance imaging scan (MRI) which showed degenerative, but not traumatic, changes. F.F.

4

No. 8.c. Dr. Schmidt opined that Claimant may have experienced a lumbar strain and sprain from which she was fully recovered. F.F. No. 8.d.

Dr. Schmidt's second examination of Claimant occurred after she had undergone a lumbar fusion at L4-5. F.F. No. 8.e. He concluded that Claimant had not benefitted from the surgery, or subsequent hardware removal, in November 2018. *Id.* Dr. Schmidt determined that Claimant's surgery was consistent with degenerative issues, but he did not consider the surgery to be related to her work injury. F.F. No. 8.h. Dr. Schmidt once again opined that Claimant had a work-related lumbar strain and that she was fully recovered from it and was able to return to her preinjury position. F.F. No. 8.j.

Employer also presented surveillance footage of Claimant, which revealed her to be able to drive, walk, stand, and push a shopping cart. F.F. No. 10.

The WCJ found Claimant to be generally credible, although he did not find her persuasive that her current pain complaints were related to the work injury, in light of Dr. Schmidt's testimony to the contrary. F.F. No. 11. To the extent the parties' respective medical experts disagreed, the WCJ found Employer's witness, Dr. Schmidt, to be more credible than Dr. Zingerman. In this regard, the WCJ noted that (1) Dr. Zingerman did not have Claimant's medical records from 2015 through 2017, (2) Dr. Schmidt had a more complete set of records to review, and (3) Dr. Schmidt examined Claimant the first time more than 10 months prior to Claimant's first visit to Dr. Zingerman and prior to Claimant's back surgery. F.F. No. 12. Further, the WCJ stated that Dr. Schmidt is an expert in orthopedic surgery, and Dr. Zingerman is not. *Id.* Accordingly, the WCJ denied the Claim Petition and granted Employer's Termination Petitions. Claimant subsequently appealed to the Board.

5

### III. The Board's Opinion and Order

The Board affirmed the WCJ's Decision and Order, stating:

> While Claimant makes numerous arguments as to why the WCJ should have decided differently based on the evidence, the relevant inquiry in a substantial evidence analysis is not whether the record contains evidence to support facts other than those made by the WCJ; the critical inquiry is whether there is evidence to support the finding actually made. *Hoffmaster v. [Workers' Comp. Appeal Bd.] (Senco Prods.)*, 721 A.2d 1152 (Pa. Cmwlth. 1998). Here, there was substantial, competent evidence to support the WCJ's findings and we determine no error.

Board Op., 9/10/20, at 5.

Claimant now petitions this Court for review of the Board's Order.[1]

### IV. Arguments

### A. Claimant's Arguments

Claimant contends that the Board erred by affirming the WCJ because the WCJ's Decision and Order was not based on substantial, competent evidence. Claimant asserts "that she has experienced left low back pain, with radiating pain, since the date of the injury[,]" which "has resulted in disability as of the date of surgery, the need for [] spinal injections, nerve ablation, a spinal fusion[,] and the implantation of a spinal cord stimulator." Claimant's Br. at 15. However, the WCJ concluded that "Claimant's current condition is due to a heretofore quiescent degenerative process suddenly symptomatic at some point during the time of her injury to the point of the second [Independent Medical Examination (IME)] []."

---

[1] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830 (Pa. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

Claimant's Br. at 15-16. Claimant maintains that the medical record does not reflect a point at which Claimant recovered from the work injury and a degenerative process began. In this regard, Claimant argues that the WCJ "failed to delineate the point of recovery from the work injury and the onset of the degenerative process . . . but concludes this with nothing more." Claimant's Br. at 16. Thus, Claimant contends that the WCJ's Decision was not based upon substantial competent evidence.

In addition, Claimant argues that the Board failed to review the evidence, which was such that no objective reviewer could conclude the same as the WCJ. Claimant states:

> [t]he WCJ's reliance on the medical conclusion of the IME physician [was] a deliberate disregard of the medical record as a whole. Claimant was asymptomatic, suffered an injury, did not recover from her injury, continued to work, underwent additional medical treatment to address the chronic symptoms of her injury and has remained symptomatic.

Claimant's Br. at 17.

Claimant further asserts that the WCJ exhibited bias against her because he refused to allow her the opportunity to provide a rebuttal deposition of her treating physician, while allowing, over Claimant's objections, additional testimony from Employer's surveillance witness that could have been presented before the record was closed. Claimant adds that the WCJ inappropriately allowed Employer to proceed with a second Termination Petition that sought to terminate Claimant's benefits prior to the date of termination sought in Employer's first Termination Petition. Claimant maintains that Employer's second Termination Petition should be precluded by the doctrine of *res judicata* because it could have been litigated earlier and was not. For all of the aforementioned reasons, Claimant argues that the

7

Board erred by affirming the Decision and Order of the WCJ and that the Board's Order must be reversed and Claimant's appeal granted.

## B. Employer's Arguments

Employer contends that Claimant's arguments are "merely a challenge to the [WCJ's] credibility findings [and] thus provide no basis for reversal." Employer's Br. at 17. Employer adds that "Claimant failed to prove that the [WCJ] deliberately disregarded [] competent testimony which one of ordinary intelligence could not possibly have avoided in reaching a result." Employer's Br. at 18.

Employer further states that Claimant provided no evidence of any bias by the WCJ, and, in fact, Claimant waived this argument because she did not properly develop it in her brief. Employer maintains that "Claimant provides no evidence, simply accusations." Employer's Br. at 37. As for Claimant's contention that the WCJ exhibited bias by disallowing a rebuttal deposition from her doctor while allowing the record to be re-opened for testimony from Employer's witness relative to surveillance, Employer asserts that such a decision by the WCJ was "a proper exercise of discretion and amply supported by the fact that Dr. Zingerman had already testified regarding Claimant's diagnosis and disability status." Employer's Br. at 37. Employer adds "[t]he mere fact that the [WCJ] made rulings which Claimant disagrees with does not demonstrate bias." Employer's Br. at 38.

Employer states that Dr. Schmidt testified at his deposition that his opinion in his initial IME supported the view that Claimant was fully recovered from her work injury as of January 31, 2018. Employer notes that, based on Dr. Schmidt's opinions, it indicated at that time that it would be filing another Termination Petition, amending its position to assert Claimant was fully recovered as of January 31, 2018.

8

In addition, Employer contends that *res judicata* did not bar Employer's second Termination Petition because the first Termination Petition had not been decided by the time the second Termination Petition was filed. Thus, the matter of the "[t]ermination of Claimant's benefits had not been resolved in a final judgement, nor litigated until the current litigation." Employer's Br. at 39 (emphasis omitted).

## V.    Discussion

Upon review, we affirm the Board. At the outset, we note that the findings of the WCJ can only be disturbed if there is no substantial evidence to support the findings. *Universal Cyclops Steel Corp. v. Workmen's Comp. Appeal Bd. (Krawczynski)*, 305 A.2d 757 (Pa. Cmwlth. 1973). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703 (Pa. Cmwlth. 1995). Determinations of credibility and the weight to be afforded evidence are the prerogative of the WCJ. *Vols v. Workmen's Comp. Appeal Bd. (Alperin, Inc.)*, 637 A.2d 711 (Pa. Cmwlth. 1994). Here, the WCJ properly evaluated the testimony of Claimant and her medical expert and the testimony of Employer's medical expert, in addition to the documentary evidence, made the requisite credibility determinations, and issued a reasoned decision explaining his Decision, per the requirement of the Workers' Compensation Act.[2] The WCJ found Claimant to be generally credible but did not find her persuasive that her current pain complaints were related to her work injury. To the extent the medical experts disagreed, the WCJ found Employer's witness, Dr. Schmidt, to be more credible than Claimant's medical witness, Dr. Zingerman. Accordingly, the WCJ denied the Claim Petition and granted Employer's Termination Petitions. The Board affirmed

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

9

because it determined there was substantial, competent evidence to support the WCJ's findings and that the WCJ committed no error. In turn, we agree that there was no error by the Board in reaching its Opinion. Having determined that the Board did not err and that the WCJ's Decision and Order was based on substantial competent evidence, including credibility determinations within the WCJ's prerogative, we next address Claimant's contention that the WCJ exhibited bias by allowing Employer's surveillance witness while not allowing Claimant to present rebuttal testimony from her medical expert.

Although Employer maintains that Claimant waived her argument regarding WCJ bias because she did not fully develop it in her brief to this Court, we reject Employer's assertion. Claimant presents her argument with the requisite clarity. However, Claimant's argument fails because she does not sufficiently establish the alleged bias. In *Dow v. Workers' Compensation Appeal Board (Household Finance Company)*, 768 A.2d 1221 (Pa. Cmwlth. 2001), we reiterated that the bar is relatively high for establishing bias. We stated:

> "[I]t is presumed that a trial judge is capable of recognizing in himself/herself the symptoms of bias and prejudice. If the judge believes that he or she can hear and dispose of the case without partiality, then that decision will not be overturned, absent an abuse of discretion." To overcome this presumption, the party making the allegations must show bias on the record.

*Dow*, 768 A.2d at 1225 (quoting *Borough of Kennett Square v. Lal*, 645 A.2d 474, 478 (Pa. Cmwlth. 2001), *appeal denied*, 656 A.2d 119 (Pa. 1994)).

Here, Claimant contends that the WCJ's decision to allow an additional witness on behalf of Employer, while disallowing rebuttal testimony from Claimant's doctor, is evidence of bias. However, adverse rulings do not, in and of

10

themselves, constitute bias. ("A mere adverse ruling, without more, does not demonstrate the bias required for a recusal to be granted." *Dow*, 768 A.2d at 1225 (quoting *Commonwealth v. Miller*, 664 A.2d 1310, 1321 (Pa. 1995)). And, we see no bias in a WCJ using his discretion to manage a case fairly and efficiently as permitted by the Act and corresponding regulations. Further, "[t]he admission of evidence is a matter within the sound discretion of the WCJ." *CVA, Inc. v. Workers' Comp. Appeal Bd. (Riley)*, 29 A.3d 1224, 1230, n.12. (Pa. Cmwlth. 2011) (internal citation omitted). There is no inherent bias reflected by the WCJ's decision to allow Employer's surveillance witness to testify but not to allow a second deposition of Claimant's doctor. Claimant's medical witness testified, as did Employer's medical expert. If decisions such as the one made here by the WCJ are to be open to second guessing, a party could raise repeated requests for rebuttal upon rebuttal, asserting improper bias whenever such a request is denied. The WCJ must be allowed, within reason, to manage his caseload. That is what the WCJ did in the instant matter – no more, no less. Accordingly, we see no bias as asserted by Claimant.

In regard to Claimant's contention that Employer's second Termination Petition was precluded by *res judicata*, we disagree. "The doctrine of *res judicata* prevents the re[-]litigation of claims and issues **that have previously been decided**." *Nat'l Fiberstock Corp. (Greater N.Y. Mut. Ins. Co.) v. Workers' Comp. Appeal Bd. (Grahl)*, 955 A.2d 1057, 1061 (Pa. Cmwlth. 2008) (emphasis added). At the point that Employer filed its second Termination Petition, the claims and issues under consideration in the active, related litigation had not been decided, and thus, the doctrine of *res judicata* did not foreclose consideration of the second Termination Petition as asserted by Claimant.

11

## VI. Conclusion

For the foregoing reasons, we affirm the Order of the Board that affirmed the Decision and Order of the WCJ.

_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lisa McGarry,                          :
                    Petitioner         :
                                       :
            v.                         :    No. 991 C.D. 2020
                                       :
Doylestown Hospital (Workers'          :
Compensation Appeal Board),            :
                    Respondent         :

# **O R D E R**

     **AND NOW**, this 23rd day of August 2021, the September 10, 2020 Order of the Workers' Compensation Appeal Board is **AFFIRMED**.

 

 

_____
J. ANDREW CROMPTON, Judge