# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gene M. Cooper (Deceased),     :
Sandra Cooper, as the     :
Administratrix of the Estate of     :
Gene M. Cooper,     :
          Petitioner     :
     :
          v.     :  No. 1163 C.D. 2017
     :  Argued:  September 14, 2018
     :
Workers' Compensation Appeal     :
Board (Armstrong World Industries,     :
Inc.),     :
          Respondent     :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: November 16, 2018**

Gene M. Cooper (Deceased)[1] by Sandra Cooper, as the Administratrix of the Estate of Gene M. Cooper (Claimant), petitions for review of the July 24, 2017 Order of the Workers' Compensation Appeal Board (Board), which affirmed the December 7, 2016 decision (2016 Decision) of a Workers' Compensation Judge (WCJ) that denied two Penalty Petitions Claimant filed against Armstrong World

---

[1] Decedent passed away on February 5, 2014.

Industries, Inc. (Employer).[2] The WCJ found that the issue before her was whether Employer violated the Workers' Compensation Act[3] (WC Act) by not paying the litigation costs awarded in the underlying litigation on Decedent's claim petition. Citing the fact that the Board had granted Employer supersedeas, the WCJ found that no violation of the WC Act had occurred. On appeal, Claimant argues the scope of the Penalty Petitions was improperly narrowed to only address Employer's nonpayment of litigation costs from the underlying litigation. Discerning no error or abuse of discretion in the WCJ limiting the scope of the Penalty Petitions and denying those Petitions, we affirm.[4]

## I. Background

Now in its 11th year, this litigation has a procedurally complex and highly contentious history. Relevant here, the WCJ granted Decedent's claim petition

---

[2] This matter was argued seriately with *Armstrong World Industries, Inc. v. Workers' Compensation Appeal Board (Cooper (Deceased))* (Pa. Cmwlth., No. 1089 C.D. 2017, filed November 16, 2018), which involves a separate appeal from this July 24, 2017 Order filed by Employer. The two Penalty Petitions denied here, filed February 29, 2016, were not at issue in the other appeal.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 - 1041.4, 2501-2708.

[4] Also before this Court is Claimant's Application to Strike the Pleadings filed by Barley Snyder, LLP, Employer's counsel, (Application to Strike), in which Claimant alleges that, on May 5, 2016, the WCJ issued an order, via email, that disqualified counsel from further representing Employer and that this order was never vacated. Because this order remains in effect, Claimant asserts, all of the pleadings and filings made by Employer's counsel should be stricken. Employer filed a response, asserting the Application to Strike is without merit and should be dismissed. We agree. In the 2016 Decision, the WCJ expressly denied all of Claimant's motions and/or requests to disqualify Employer's counsel from further participation in the ongoing litigation in this matter. (2016 Decision, Finding of Fact (FOF) ¶ 12.) Thus, to the extent that the WCJ's May 5, 2016 email could be construed as Claimant asserts, the WCJ essentially vacated that "order" when she denied all of Claimant's motions and/or requests to disqualify counsel in the 2016 Decision. Accordingly, Claimant's Application to Strike is denied.

finding that he suffered from work-related toxic encephalopathy with Parkinsonian symptoms that was caused by his exposure to a variety of chemicals and solvents at work.[5] In addition to directing Employer to pay Claimant's reasonable and necessary medical expenses, the WCJ initially directed Employer to pay litigation costs in the amount of $99,684.04. The Board, on November 26, 2014, affirmed the grant of the claim petition, but remanded for further proceedings regarding the amount of the litigation costs awarded. Following these proceedings, the WCJ issued a second decision approving litigation costs. Employer filed a second appeal to the Board, which resulted in a second remand for the consideration of a more detailed Bill of Costs provided by Claimant. Ultimately, on November 28, 2016, the WCJ ordered Employer to pay $114,225.62 in litigation costs, excluding costs for mileage, lodging, and meals, which was affirmed by the Board in its July 24, 2017 Order.

While the matter was on the second remand, Claimant filed two Penalty Petitions on February 29, 2016, alleging Employer violated the WC Act, Rules and Regulations because

> Employer used fraud to defend this claim. Employer's fraud was perpetrating acts to conceal [Decedent's] exposure and medical records. Employer's fraud prevented [Decedent] from establishing the rebuttable presumption pursuant to Section 108(c), 77 P.S. [§] 27.1(c). As a proximate result of Employer's fraud, Employer's contest was unreasonable.

---

[5] The specific details regarding the background of this litigation and the underlying claim petition are set forth in *Armstrong World Industries, Inc.*, slip op. at 3-12.

3

(Petition for Penalties, Certified Record (C.R.) Item 2.[6]) Employer denied the allegations. (C.R. Items 4, 13.)

The WCJ held three hearings on the Penalty Petitions. During two of those hearings, the bases of the Penalty Petitions were discussed. (2016 Decision, Findings of Fact (FOF) ¶¶ 10-11.) At the March 17, 2016 hearing, the WCJ inquired why she was hearing these Penalty Petitions. Claimant's counsel responded she should "keep the penalties because the penalty petitions are based on employer's fraud during the pendency of this litigation with respect to employer's offer of evidence that . . . [Decedent's] exposure and medical records were either shredded or destroyed or unavailable" and the WCJ had "made decisions with respect to litigation expenses that, in fact, had to recreate [Decedent's] exposure record." (Hr'g Tr., Mar. 17, 2016, at 5.) Claimant's counsel indicated that Employer was contesting certain litigation expenses. (*Id.* at 8.) The WCJ then asked, "[t]he penalty petitions, are they with regard to **litigation costs**?" (*Id.* (emphasis added).) Claimant's counsel responded "[**y**]**es**," and the WCJ concluded that the Penalty Petitions would remain with her. (*Id.* (emphasis added).) A similar exchange occurred at the May 12, 2016 hearing, at which the WCJ stated that the pending issue before her was "two penalty petitions for non[]payment of litigation costs, which are at issue." (Hr'g Tr., May 12, 2016, at 7.) After further discussion, the parties agreed that this was the issue before the WCJ.[7] (*Id.* at 7-8, 209, 230-34.) Based on these representations, the WCJ

---

[6] The Penalty Petition at Certified Record Item 11, also filed on February 29, 2016, contains the same allegations although worded slightly differently. (Petition for Penalties, C.R. Item 11.)

[7] The WCJ also stated, at the June 16, 2016 hearing, "that the Penalty was for the nonpayment of litigation costs." (Hr'g Tr., June 16, 2016, at 19-20.)

indicated in the 2016 Decision, that "this [D]ecision **will only** address this specific issue," *i.e.*, the nonpayment of litigation costs. (FOF ¶ 11 (emphasis in original).)

Claimant argued that all of the litigation costs should be reimbursed and a penalty awarded due to the fraud Employer allegedly perpetrated regarding the destruction of Decedent's medical and exposure records. In support of this claim, Claimant presented various witnesses and documentary evidence indicating that, in 2014, records related to Decedent's employment and exposure were discovered by other employees and were, at Employer's instruction, thrown into a dumpster. Claimant asserted that, with this discovery, Employer's prior claim that the records had been inadvertently destroyed earlier was proven fraudulent. Claimant contended that had Employer turned over the relevant records, litigation over Decedent's condition could have been avoided in its entirety. Thus, according to Claimant, it was entitled to recover **all** of the litigation costs, as well as a penalty based on Employer's actions.

Employer presented testimony indicating, as Employer had asserted in the underlying litigation, that Decedent's exposure and employment records were inadvertently destroyed and the records "discovered" in 2014 were either unrelated to Decedent or had been provided to Decedent during the underlying proceedings. Employer presented evidence indicating that it had advised Claimant's counsel that it would pay a portion of the litigation costs and had, in fact, paid some of those litigation costs.[8] (FOF ¶¶ 37-39.) Employer also asserted that while it had paid

---

[8] Employer contested paying for, *inter alia*, certain expert reports that were not used in the underlying litigation, legal expenses related to Decedent's wife having to obtain guardianship of Decedent due to his incapacity, access to online medical journals and articles, costs that appeared to be duplicative, and costs that were not supported by paper invoices. (Hr'g Tr., Mar. 17, 2016, at 20, 22, 27-28, 35, 39.)

some of the litigation costs, it had no obligation to do so because the Board had granted it supersedeas. Employer entered these supersedeas orders as exhibits D-2 and D-3.

After summarizing the evidence, the WCJ found that Employer did not violate the WC Act because "Employer did not have an obligation to render payment of the court-ordered litigation costs as the [Board] had issued a supersedeas order granting supersedeas on said payment." (*Id.* ¶ 41.) Accordingly, the WCJ held that Claimant had not met the burden of proof on the Penalty Petitions and, therefore, denied those Petitions. (2016 Decision, Conclusion of Law ¶ 2.)

## II. Board's Decision

Claimant appealed to the Board, arguing the WCJ erred in "limiting the scope of [the] Penalty Petitions based on [Employer's] *ex parte* communication with the director of the [WC] Office of Adjudication" (Director) and this limitation violated Claimant's due process rights of notice and opportunity to be heard. (Board Opinion (Op.), July 24, 2017, at 6.) In Claimant's brief to the Board, Claimant included, as evidence of an alleged *ex parte* communication between Employer and Director, a copy of an email from Director, addressed to both Claimant's counsel and Employer's counsel, which stated "I've reviewed both [Employer's Counsel's] email and [Claimant's Counsel's] email below . . . ." (*Id.* at 7.) The emails from counsel to Director were not attached to Claimant's brief. (*Id.* at 7 n.6.)

The Board found no indication in the record or the 2016 Decision that Employer engaged in *ex parte* communication with Director or, if such

6

communication had occurred, that the WCJ had been influenced by it. It noted that the email Claimant relied upon was addressed to both parties' counsel and references communications Director received from both parties. The Board "fail[ed] to see how this is evidence of an *ex parte* communication." (*Id.*) On the merits, the Board found no error in the WCJ's limiting the scope of the Penalty Petitions to Employer's nonpayment of litigation costs previously approved by the WCJ. The Board noted that the WCJ confirmed at both the March 17, 2016, and May 12, 2016 hearings that this was the issue before her on the Penalty Petitions. (*Id.* at 7-8.) As for Claimant's due process arguments, the Board noted that the WCJ allowed Claimant to present many witnesses in support of this claim and, therefore, was afforded an opportunity to present Claimant's case. (*Id.* at 8 n.8.) Accordingly, the Board affirmed the 2016 Decision denying the Penalty Petitions. Claimant now petitions this Court for review.[9]

### III. Discussion

On appeal, Claimant argues it did not agree to limit the scope of the Penalty Petitions "to a straight up analysis of the litigation costs at issue" and the Board erred in holding that Claimant did so. (Claimant's Brief (Br.) at 15.) Claimant contends the passages from the WCJ hearings on the Penalty Petitions upon which the Board relied were taken out of context. There is no question, Claimant asserts, that the question at issue related to Employer's unreasonable contest of the underlying litigation via its fraudulent destruction and/or nondisclosure of

---

[9] In reviewing Board orders, we determine "whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Phila. v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

7

Decedent's work and exposure records, which then required the recreation of those records. Because Claimant had to recreate the records and litigate the entire matter as a result of Employer's conduct, Claimant argues Employer should be responsible for **all** of the litigation costs and for paying a penalty due to its fraudulent actions. Claimant also challenges the Board's determination that there was no record evidence of Employer's counsel having an *ex parte* communication with Director, asserting that no other conclusion can be reached to explain why subpoenas Claimant had secured from the WCJ to question Employer's counsel regarding the destruction and/or withholding of exposure documents were quashed after Employer contacted Director. Moreover, Claimant argues, Employer's counsel admitted during oral argument before the Board that he initiated such communication with the Director.

Employer responds that the issue raised in the Penalty Petitions was whether it had improperly withheld payment of litigation costs in violation of the WC Act. It maintains the scope of the Penalty Petitions was discussed and agreed to by the parties and the WCJ during the hearings. Employer asserts Claimant's arguments on appeal relate to matters not relevant to the determination of whether the WCJ abused her discretion in denying the Penalty Petitions. According to Employer, no abuse of discretion or legal error occurred here because, while Employer paid some of the litigation costs, it had no obligation to do so having been granted supersedeas by the Board. As there were no payments of litigation costs due until the pending appeals were resolved, Employer argues, there was no violation of the WC Act.

Pursuant to Section 435(d) of the WC Act, 77 P.S. § 991(d),[10] a WCJ is authorized to impose penalties for violations of the WC Act. In a penalty petition proceeding, the claimant bears the burden of proving a violation of the WC Act or its regulations. *Shuster v. Workers' Comp. Appeal Bd. (Pa. Human Relations Comm'n)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000). The assessment of a penalty, if any, is within the WCJ's discretion. *Essroc Materials v. Workers' Comp. Appeal Bd. (Braho)*, 741 A.2d 820, 825 (Pa. Cmwlth. 1999). "An abuse of discretion is not merely an error of judgment" but occurs, *inter alia*, "when the law is misapplied in reaching a conclusion." *Candito v. Workers' Comp. Appeal Bd. (City of Phila.)*, 785 A.2d 1106, 1108 (Pa. Cmwlth. 2001). One common violation of the WC Act is where there is an excessive or unreasonable delay in payment to a claimant by an employer. *McKay v. Workmen's Comp. Appeal Bd. (Bethenergy Mines, Inc.)*, 654 A.2d 262, 264 (Pa. Cmwlth. 1995).

The Penalty Petitions alleged fraud by Employer which, Claimant argued, hindered the ability of Decedent to present his WC claim. During the hearings, the WCJ, who has presided over this matter since it began 11 years ago, explained her understanding as to the basis of the Penalty Petitions – which was that they were related to Employer's nonpayment of the litigation costs awarded in the underlying litigation. Claimant agreed that this was the basis of the Penalty Petitions, and Employer concurred. (Hr'g Tr., Mar. 17, 2016, at 5, 8; Hr'g Tr., May 12, 2016, at 7-8, 209, 230-34.) Although Claimant takes the position that all of the litigation

---

[10] Section 435(d) of the WC Act was added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 991(d). That section states that "[t]he department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure." *Id.*

9

costs should be paid, Claimant did not challenge the premise that the Penalty Petitions related to the nonpayment of litigation costs that had been awarded. Due to Claimant's agreement that the scope of the Penalty Petitions was related to the nonpayment of the awarded litigation costs, the WCJ did not err or abuse her discretion in addressing that issue alone. With regard to the allegation that Employer's counsel had an *ex parte* communication with Director in an attempt to limit the Penalty Petitions' scope, even if such communication occurred – and there is no evidence in the record that it did – Claimant's agreement during the hearings support the WCJ's decision to limit the matter to only whether Employer violated the WC Act by not paying the litigation costs.[11]

Finally, the WCJ denied the Penalty Petitions because Claimant did not establish Employer's violation of the WC Act or its regulations due to Employer's nonpayment of Claimant's litigation costs, noting that the Board had granted Employer a supersedeas. A grant of supersedeas will relieve an employer of the obligation to pay benefits or, here, litigation costs until an appeal is decided. *See Crucible, Inc. v. Workers' Comp. Appeal Bd. (Vinovich)*, 713 A.2d 749, 752 (Pa. Cmwlth. 1998) (holding that the time limit to pay benefits under the WC Act begins to run "when the order to pay is entered **and no supersedeas has been granted**") (emphasis added). The Board granted Employer's request for

---

[11] We observe that while Claimant asserts some of Claimant's subpoenas were quashed without explanation, the parties argued the subpoena issue at the May 12, 2016 hearing. The WCJ concluded she did not need to hear the testimony of the witnesses Claimant wanted to subpoena. In addition, she concluded that Employer's lead counsel was an officer of the court and, as such, was presumed to have been truthful and honest with the WCJ in his representations. (Hr'g Tr., May 12, 2016, at 278-86.) Furthermore, to the extent Claimant contends Employer admitted to an *ex parte* communication with Director during argument before the Board, the Board's decision, in which it found no evidence of an *ex parte* communication, does not support Claimant's contention.

supersedeas, a fact Claimant does not dispute. The Board's supersedeas orders specifically reference litigation costs. (Exs. D-2, D-3.) Therefore, Employer was not yet required to pay any of the litigation costs ordered in the underlying litigation. Because Employer had no obligation to pay the litigation costs, the WCJ properly held that Claimant did not establish that Employer violated the WC Act or its regulations by not doing so. Absent a violation of the WC Act or its regulations, no penalty petition can be granted or penalties imposed. Accordingly, the WCJ did not abuse her discretion in denying the Penalty Petitions.

## IV. Conclusion

Because there was no error or abuse of discretion in the WCJ limiting the scope of the Penalty Petitions to the issues agreed to during the hearings on those Petitions or in denying the Penalty Petitions due to Claimant's failure to prove a violation of the WC Act or its regulations, we affirm.[12]

_____
**RENÉE COHN JUBELIRER,** Judge

Judges McCullough and Ceisler did not participate in the decision in this case.

_____

[12] Claimant, through counsel, also filed what it calls an Application for a Writ of Mandamus (Application), which seeks the same relief as Claimant's other filings, a remand for further proceedings before the WCJ based on the alleged *ex parte* communication between Director and Employer's counsel. However, due to our rejection in this appeal of Claimant's arguments regarding the alleged *ex parte* communication, the Application is dismissed.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gene M. Cooper (Deceased),       :
Sandra Cooper, as the            :
Administratrix of the Estate of   :
Gene M. Cooper,              :
               Petitioner    :
                      :
         v.           :  No. 1163 C.D. 2017
                      :
Workers' Compensation Appeal   :
Board (Armstrong World Industries, :
Inc.),                     :
            Respondent  :

## O R D E R

**NOW**, November 16, 2018, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**. In addition, the Application to Strike the Pleadings filed by Barley Snyder, LLP, filed by Gene M. Cooper (Deceased) by Sandra Cooper, as the Administratrix of the Estate of Gene M. Cooper (Claimant), is **DENIED**, and the Application for a Writ of Mandamus filed by Claimant is **DISMISSED**.

 

_____
**RENÉE COHN JUBELIRER,** Judge